## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **Moreau** | **Case No. 6:18-cv-00532** |
| **Versus** | **Judge Terry A. Doughty** |
| **St. Landry Parish Fire District No. 3** | **Magistrate Judge Carol B. Whitehurst** |

## REPORT AND RECOMMENDATION

Before the Court, upon referral from the district judge, is a Motion To Dismiss filed by Defendant St. Landry Parish Fire District No. 3 ("District 3") [Rec. Doc. 4], Plaintiff, Joseph Larry Moreau, Jr.'s Opposition Memorandum [Rec. Doc. 12] and District 3's Reply thereto [Rec. Doc. 14]. For the reasons that follow, the Court recommends that the motion be denied.

## I.     BACKGROUND

District 3 is a fire protection district which is a political subdivision of the State of Louisiana. *R. 1, ¶1*. It is governed by a Board of Commissioners ("BOC"). *See*, La. R.S. 40:1495 and 1499. Moreau was employed by District 3 as a Fire Captain until March 20, 2018 at which time the BOC terminated him. *Id. at ¶ 5*.

On or about January 8, 2018, the Vermilion Parish School Board ("school board") held a public meeting. At that meeting, the school board had one of its teachers escorted out of the meeting by a law enforcement officer. The teacher and

law enforcement officer exited the meeting room and entered the hallway outside of the meeting room. The officer then handcuffed the teacher and took her to jail. *Id. at ¶¶ 6-8.*

One of Moreau's friends created a post on Facebook relating to this incident involving the Vermilion Parish School Board. Moreau responded to that post by making the following comment on Facebook:

> [A]ll of this going on with this poor teacher being treated so unfairly makes one thing perfectly clear... These "boards" everywhere, ruled by good old boy politics need to be dissolved ASAP..!! We have the same exact problem at our fire department… A board of clueless idiots making the decisions that affect many including the very employees that actually do the job.. It's a joke.. […]. I hope this teacher makes them pay…and pay big time!!

*Id. at ¶¶ 11-12.*

District 3 subsequently opened a disciplinary investigation into whether this comment violated District 3's social media policy and state civil service laws. After conducting a pre-disciplinary conference, the BOC voted to terminate Moreau. The reasons for Moreau's termination were memorialized in a March 21, 2018 "Interoffice Memorandum" from the BOC to Moreau. Those reasons included violations of several provisions of District 3's social media policy and Louisiana Civil Service Law, *Id. at ¶¶ 13-14; R. 1-1, Exh. A:*

Our investigation has provided information to support the following:

> *On or about January 12, 2018 you responded to a post on Facebook in which you included disparaging remarks*

2

*about the St. Landry Parish Fire District No. 3 Board of Commissioners.*

This is a violation of our departmental policies which state the following:

*Social Media will be used in a positive and professional manner that will not bring discredit to the Department, its members or the public.*

*2.2 Personnel are free to identify themselves as private citizens. Personnel may post, with approval from the Fire Chief or his/her designee, material that references employment by St. Landry FD #3 employees to social media sites to the degree that his or her speech does not: 2.2.4 Negatively affect the public perception of the Department.*

*3.1 Publishing or posting false information that harms the reputation of another person, group, or organization (defamation).*

*5.2 Speech involving himself of herself or other Department personnel reflecting behavior that would be considered reckless or irresponsible.*

Your actions will result in disciplinary action for the reason(s) identified below from

Louisiana Revised Statute 33:2500:

*(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.*

*(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.*

*(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.*

3

Moreau did not appeal his termination to District 3's civil service board under La. R.S. 33:2561. Instead, he commenced these §1983 proceedings.

Moreau filed this action under 42 U.S.C. § 1983, alleging violation of his civil rights in that: (1) District 3 fired him in retaliation for engaging in speech protected by the First Amendment and Article I, § 7 of the Louisiana Constitution, *R. 1, ¶¶ 16-30*; (2) District 3's social media policy is vague and therefore unconstitutional on its face *Id. at ¶¶ 31-34*; and (3) District 3's social media policy is invalid as applied, *Id. at ¶¶ 55-71*. Moreau amended his complaint naming as additional defendants the Board of Commissioners of St. Landry Parish Fire Protection District No. 3 ("BOC") and the individual BOC, Wilfred Kinnerson, Donald Robinson, Greg Doucet, Terri Courvelle, Frank Guidroz, Ryan Chachere, and Pamela Jackson. *R. 6.* Moreau requests damages and attorney's fees under 42 U.S.C. § 1988 against all defendants. Defendant, District 3, filed this Motion To Dismiss all of Plaintiff's claims.

## II.    CONTENTIONS OF THE PARTIES

First, Defendant contends that Plaintiff's comment did not involve a matter of "public concern." Specifically, it argues that when Plaintiff's posts are considered under the factors set out in *Connick v. Myers*, 461 U.S. 138, 143 (1983), context, form and content, they all weigh against a finding of public concern. Defendant also contends that even assuming that Plaintiff's comments were of some public concern,

4

the concern is outweighed by District 3's interest in promoting efficiency because, as a fire department, District 3 has a heightened need for order, loyalty and harmony. Next, Defendant argues that District 3's social media policy is not overbroad as applied because Moreau's speech at issue is not protected by the First Amendment. Finally, Defendant argues that District 3's social media policy is not vague or overbroad in that it allows the posting of matters of public concern as long as the speech does not reference employment by St. Landry Fire District 3.

In his opposition, Moreau contends that his speech at issue was as a private citizen, not as Defendant's employee, about a matter of widespread public interest unrelated to his employment, as allowed under District 3's social media policy, and should therefore be protected under the First Amendment. He further contends that his speech related to a matter of public concern as to content (his criticism of public officials), form (he spoke on Facebook to a friend with no connection to his employer), and content (the widespread discussion of a First Amendment retaliation by a public board against a person who spoke on a matter of public concern). He submits that none of these were aimed at District 3 or the BOC. Finally, he contends that while District 3 contends the social media policy allows a person to "speak freely on matters of public concern," because it seeks to prohibit information that would reflect unfavorably upon District 3, it is vague, overbroad and unconstitutional on its face.

## III.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp*., 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims "across the line from conceivable to plausible." See *Iqbal* at 679, 683. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor

6

of the plaintiff. *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## IV.    DISCUSSION

### A. Plaintiff's First Amendment Freedom of Speech Retaliation Claim

To succeed on his First Amendment freedom of speech retaliation claim, Plaintiff must show that "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public service; and (4) the speech precipitated the adverse employment action." *Rodriguez v. City of Corpus Christi*,   2017 WL 1476877, at *2 (5th Cir. 2017) (quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)). As there is no question that Plaintiff suffered an adverse decision in that his employment was terminated, Defendant argues that under element two Plaintiff did not speak on a matter of public concern, and under element three the concern expressed in Plaintiff's speech was outweighed by District 3's interest in promoting efficiency.

### 1. Whether Plaintiff spoke on a matter of public concern

Whether speech addresses a matter of public concern is a question of law to be resolved by the court. *Id.* (citing *Graziosi v. City of Greenville, Miss.*, 775 F.3d 731, 736 (5th Cir. 2015)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005). Public concern is something that is subject of legitimate news interest. *Marceaux v. Lafayette City-Par. Consol. Gov.*, 921 F. Supp. 2d 605, 634 (W.D. La. 2013) (citing *Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378, 382 (5th Cir. 2006)). It is well-established "that speech relating to official misconduct or racial discrimination almost always involves a matter of public concern." *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008). Moreover, "speech 'that potentially affects public safety relates to the public concern.'" *Davis v. Allen Par. Serv. Dist.*, 210 Fed.Appx. 404, 410 (5th Cir. 2006) (quoting *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 373 (5th Cir. 2000)).

Plaintiff alleges that prior to writing the comment at issue, a public school teacher, in a public meeting, attempted to question her employer, the school board, about its desire to give a raise to the school superintendent. The teacher was not allowed to speak and instead was removed from the public meeting by a police

office, placed in handcuffs and taken to jail. *R. 1, ¶¶ 6-8.* He further alleges that this conduct of the School Board drew extensive news coverage and resulted in a lawsuit filed by the Louisiana Attorney General against the school board. *Id., ¶¶9-11.* Plaintiff states that a friend of his, knowing that Plaintiff's wife was a school teacher in Louisiana, commented about the event on Facebook. *Id. at ¶11.* Plaintiff responded to his friend's comment by writing the comments at issue on Facebook.

Plaintiff alleges his comment stated, "all of this going on with this poor teacher being treated so unfairly makes one thing perfectly clear... These 'boards' everywhere, ruled by good old boy politics need to be dissolved ASAP." As pointed out by Defendant, however, Plaintiff's alleged comment also states, "We have the same exact problem at our fire department…A board of clueless idiots making the decisions that affect many including the very employees that actually do the job," and finally, "I hope this teacher makes them pay." Defendant argues that the additional statements as to "our fire department" and "a board of clueless idiots" conveys no information other than the fact that, as an employee of the fire department, Moreau was upset with the status quo. It contends that such an expression of frustration does not qualify as a matter of public concern.

The Court disagrees that these comments **must** be interpreted to indicate that he was referring to the Defendant's board as "clueless idiots" or that he was speaking as an employee of Defendant. An unbiased reading of the comment makes it just as

viable that Plaintiff was continuing to comment about the school board (the actual subject of his comment) as "clueless idiots" that should be made to pay the teacher.

*a.. Content*

The Court finds that Plaintiff has sufficiently alleged that the content of the Facebook comment was on a matter of public concern. The content of speech concerns a matter of public concern "[i]f releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance...." *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001). Much of Plaintiff's comment addresses the conduct by the school board in refusing to allow an employee to speak on spending public school funds, a matter of public concern. *See Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir.1991) ("The existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern."); *Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir.2006) ("Although Modica's letter addressed some private issues, the content of Modica's letter is primarily public."); *See also Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir.1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law, and seeing that public funds are not purloined."). Even if Plaintiff's comment about "the fire department" is considered an employment grievance, it is composed of "mixed speech," i.e., speech involving matters of public concern as

well as employees' private, personal interests. *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 825-26 (5th Cir. 2007). "[E]ven a mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech." *Stotter* at 826. Assuming the allegation that the subject teacher was not allowed to comment on the school board's spending of school/public funds in a public hearing and was handcuffed and taken to jail is true, as the Court must, such action relates to a matter of public concern. *See e.g. Pickering v. Board of Education*, 391 U.S. 563, 571 (1968) (teachers who criticized the school board's allocation of school funds spoke on a matter of public concern).

b. *Form*

The Court finds that the form of Plaintiff's speech -- a public post on Facebook -- also weighs in favor of finding that Plaintiff spoke on a matter of public concern. Such a posting is distributed to and accessible by the public outside of Plaintiff's control. Therefore, the form of Plaintiff's posts on a medium accessible by the community was primarily public. *See Modica*, 465 F.3d at 181 (concluding that a letter communicated to a state representative outside of the public employer's organization was public); Cf. *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362–63 (5th Cir.1986) ("Terrell's personal notebook cannot serve as the basis for a claim that he was fired for exercising his first amendment rights. He made no effort

to communicate the contents of the notebook to the public, and the evidence does not suggest that he would have had any occasion to do so.").

### c. Context

The Court finds that the context of Plaintiff's Facebook comment also favors protection. Speech is made in the context of a public concern if made "against a backdrop of widespread debate in the community" rather than "solely in furtherance of a personal employer-employee dispute." *Gibson v. Kilpatrick*, 838 F.3d 476, 486-87 (5th Cir. 2016) quoting *Salge*, 411 F.3d at 187. "The audience before whom the employee speaks and whether the employee speaks in response to an invitation may also be relevant to an analysis of the context in which an employee's speech is offered." *Id.* Plaintiff specifically spoke on a matter of widespread public concern related to the school board's action of refusing to allow its employee to speak about spending school funds/taxpayer's money as well as concern that other boards foreclose their employees from speaking out about such issues.

Considering the content, form and context of Plaintiff's speech together, the Court finds that Plaintiff has sufficiently alleged a claim for speech that is entitled to First Amendment protection.

### 2. Whether the public concern is outweighed by District 3's interest

Defendant further argues that even assuming Plaintiff's comments were of some public concern, the concern is outweighed by District 3's interest in promoting

efficiency because, as a fire department, District 3 has a heightened need for order, loyalty and harmony. Defendant further argues that Plaintiff's comments aimed at the BOC of District 3 "ruin morale and discipline, especially when perpetrated by someone of Plaintiff's experience and position as Fire Captain."

The Fifth Circuit has held that it must "balance the employee's interest, as a citizen, in commenting upon matters of public concern against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (citing *Rankin v. McPherson*, 483 U.S. 378, 388 (1987), and *Pickering*, 391 U.S. at 568). This inquiry "involves whether the speech: (1) was likely to generate controversy and disruption, (2) impeded the department's general performance and operation, and (3) affected working relationships necessary to the department's proper functioning." *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir. 1988).

In his Complaint, Plaintiff alleges that his Facebook comment was made as an interested citizen and resident addressing the widespread public concern related to the school board's refusal of its teacher's request to speak at a public meeting about the spending of public funds. *R. 1, ¶¶ 6-12, 26*. He alleges that his statements about "an unnamed fire department" and "boards… ruled by good old boy politics" and "clueless idiots" did not identify him as Defendant's employee. *Id. at ¶¶ 20-24*.

13

He further alleges that the comments did not identify the Defendant or the Defendant's BOC. *Id.*. Rather, the allegations regarded "official misconduct and cronyism that has made Louisiana a byword of corruption and dysfunction for decades." *Id. at ¶¶ 22-25.*

Defendants speculate that Plaintiff's comments will ruin morale and discipline within the District. In *Brawner*, the defendants argued that the police department's interest in conducting thorough investigations outweighed the Plaintiff's interest in expressing dissatisfaction with his treatment during such an investigation. In rejecting this argument, the Fifth Circuit stated that the defendants' argument "mischaracterizes Brawner's conduct as well as his interests at stake." *Id.* at 192. Rather, the court held that "if the allegations of internal misconduct are indeed true, [the plaintiff's] statements could not have adversely affected the proper functioning of the department since the statements were made for the very reason that the department was not functioning properly due to corruption. Here, by focusing only on Plaintiff's comment related to "boards" "of clueless idiots" "ruled by good old boy politics" Defendants mischaracterize Plaintiff's comment as well as his interest at stake. Defendants disregard the portion of the comment related to the "poor teacher being treated so unfairly" and alleging misconduct of "boards" "making decisions that affect many including the very employees that actually do the job."

The Court finds that, Plaintiff's allegations establish a plausible claim that Plaintiff's comment addressed matters of public concern and his interest in expressing that comment was not outweighed by Defendant's interest.

**B.    District 3's Social Media Policy**

Plaintiff challenges District 3's social networking policy ("the Policy") alleging that it is invalid as applied and is also facially invalid. Plaintiff alleges that Defendant's social networking policy states that "Social Media will be used in a positive and professional manner that will not bring discredit to the Department, its members or the public." The Policy further provides:

> 2.2 Personnel are free to identify themselves as private citizens. Personnel may post, with approval from the Fire Chief or his/her designee, material that references employment by St. Landry FD #3 employees to social media sites to the degree that his or her speech does not:
>
> 2.2.4 Negatively affect the public perception of the Department.
>
> 3.1 Publishing or posting false information that harms the reputation of another person, group, or organization (defamation).
>
> 5.2 Speech involving himself of herself or other Department personnel reflecting behavior that would be considered reckless or irresponsible.

Individuals do not relinquish their First Amendment rights by accepting employment with the government. *See Pickering*, 391 U.S. at 568. The Supreme Court has recognized, however, that the government "may impose restraints on the

job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Employees Union* (*NTEU*), 513 U.S. 454 (1995). In evaluating the validity of a restraint on government employee speech, courts must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568

*Pickering*'s balancing test applies only when the employee speaks "as a citizen upon matters of public concern" rather than "as an employee upon matters only of personal interest." *Connick v. Myers*, 461 U.S. 138, 147 (1983). The government does not have to justify in court every disciplinary action taken in response to an employee's private speech regarding personal matters, such as a change in duties. *Id.* Where the employee speaks on matters of public concern, however, the government bears the burden of justifying any adverse employment action. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

The threshold question in this case is whether District 3's Policy regulates its employees' rights to speak on matters of public concern.

### 1.    *Facially overbroad*

"A facial challenge to a law is 'the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists

under which the [law] would be valid.'" *Pounds v. Katy Independent School Dist.*, 517 F.Supp.2d 901, 911–912 (S.D. Tex. 2007) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  Before a statute or regulation may be invalidated on its face, the overbreadth must be "substantial." *Roberts v. Haragan*, 346 F.Supp.2d 853, 871 (N.D. Tex. 2004) (quoting *Board of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987)). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Board of Airport Comm'rs*, 482 U.S. at 574. The issue for First Amendment purposes is whether the law in question reaches "a substantial amount of constitutionally protected conduct." *City of Houston v. Hill*, 482 U.S. 451, 458 (1987).

Plaintiff alleges that the Policy language allows only positive speech about Defendant and seeks to prohibit all negative speech that might "Negatively affect the public perception of the Department." *R. 1, ¶¶ 36-37*. Plaintiff alleges that because the Policy "regulates substantially more speech than the U.S. and Louisiana Constitutions allow" and because "its plain language impermissibly punishes otherwise constitutionally protected speech beyond the law's allegedly legitimate purpose," the Policy is facially overbroad. *Id. at ¶¶ 38-39*. He alleges that the Policy is not restricted to social media participation during working hours or on work

computers but applies at all times in all places and to all social media. *Id. at ¶40.* Plaintiff further alleges that Defendant's Policy is overbroad because any adverse employment action taken is impermissible; therefore prohibiting "negative speech or expressive communication about official misconduct, incompetence, corruption, cronyism, misuse of publicly-owned equipment, payroll fraud, etc." *Id. at. ¶ 42.*

In its Motion, Defendant argues that Plaintiff ignores the opening statement of section 2.2 of the Policy: "Personnel are free to identify themselves as private citizens." It contends that had Plaintiff used this "private citizen" safety valve, his First Amendment rights as an employee would not have been "significantly compromised." Defendant further argues that as long as the employee's speech does not reference employment by District 3, the "negative perception" provision does not regulate the employee's speech. As such, Defendant asserts that Plaintiff's facial challenge based on overbreadth should fail because "there is no realistic danger that District 3's social media policy will substantially restrain a significant amount of speech protected by the First Amendment."

Based on the allegations in Plaintiff's Complaint which are contrary to Defendant's argument, *R. 1 at ¶¶ 36-44,* the Court finds that Plaintiff has sufficiently alleged a plausible claim that Defendant's social media policy was facially overbroad.

### 2. *Vagueness*

Plaintiff also alleges that the Policy is void for vagueness because the language is vague, uncertain and undefined. He asserts that the directive that, "Social Media will be used in a positive and professional manner that will not bring discredit to the Department, its members or the public" is inherently vague and employs terms ("positive," "professional," "discredit") that are inherently vague and can mean different things to different people. *Id. at ¶¶ 47-48.* Further, Plaintiff alleges that the Policy fails to define or specify what speech might "impair working relationships of this Department" nor does it distinguish the working relationships "for which loyalty and confidentiality are important" from those for which loyalty and confidentiality are not important. *Id. at ¶49.* He contends that ultimately, the Policy "imped[es] the performance of duties, impairing discipline and harmony among co-workers, and negatively affecting the public perception of the Department." *Id. at ¶ 50.* Plaintiff alleges that the Policy is unconstitutional because it forbids speech unless the speaker obtains prior approval of the Department.

In its motion, Defendant concedes that "District 3's social media policy employs broad language" but asserts that Plaintiff's vagueness challenge "is clearly the endeavor of someone intent on finding fault at any cost." Defendant asserts, without specificity, that the Policy "is written in terms that the ordinary person

exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest."

Based on the allegations in Plaintiff's complaint, *R. 1, ¶¶ 47-50*, the Court finds that Plaintiff has alleged a plausible claim of vagueness as to Defendant's social media policy.

### 3. *Invalid as applied*

Plaintiff alleges that he did not identify himself as Defendant's employee and did not identify Defendant or its Board of Commissioners, and therefore, his speech could not affect, negatively or otherwise, the public perception of the Department. *Id. at ¶¶ 57, 58.* Yet Plaintiff was fired for allegedly violating section 2.2 and 2.2.4 of the Policy. *Id. at ¶ 56.*

Plaintiff further alleges he was fired for allegedly violating Section 3.1: "Publishing or posting false information that harms the reputation of another person, group, or organization (defamation[1])." *Id. at ¶ 59.* However, he did not publish or post any information that harms the reputation of another person, group, or organization. Nor did he publish any false information. *Id. at ¶¶ 60, 61.* He alleges that the terms of the Policy do not proscribe alleged defamation, but merely provide that "Department personnel should be aware that he or she may be subject to civil

---

[1] Moreau alleges that "defamation is limited to false statements of fact" and "does not consist of statements of opinion." *Id. at ¶¶ 61, 62.*

litigation" for engaging in certain speech, including defamation." *Id. R. 1-2, Exh. B, Policy Manual, p. 54.*

Finally, as to his termination, Plaintiff alleges he was fired for allegedly violating section 5.2 of the policy: "Speech involving himself or herself or other Department personnel reflecting behavior that would be considered reckless or irresponsible." *R. 1, ¶ 68, R. 1-2, Exh. A.* Because the Policy does not define "behavior that would be considered reckless or irresponsible" and does not state in whose estimation any such behavior would be considered reckless or irresponsible, Plaintiff alleges the Policy language prohibits all expression regarding reckless or irresponsible behavior by department personnel–including behavior that is manifestly a matter of public concern and public safety. *Id. at ¶¶ 69, 70.* Plaintiff alleges, to the extent his comment "concerned boards ruled by good old boy politics, consisting of clueless idiots making the decisions that affect many–including taxpayers and employees," he was fired for engaging in speech on a matter of public concern. *Id. at ¶71,*

Defendant relies on a ruling in a motion for summary judgment[2] in support of his argument that Plaintiff's complaint as to his "as applied" claim should be dismissed. Defendant merely states that "[b]ecause Moreau's speech is not protected, his 'as applied' challenge must fail." In this motion under Rule 12(b)(6),

---

[2] *Buchanan v Alexander*, 284 F.Supp.3d 782, 828 (M.D. La. 2018),

however, the Court has determined that Plaintiff has alleged a plausible claim for violation of his First Amendment right to freedom of speech in this case. Accordingly, the Court finds that Plaintiff has also alleged a plausible First Amendment "as-applied" claim as to Defendant's social media policy.

## V.    CONCLUSION

For the reasons stated,

**IT IS RECOMMENDED** that the Court DENY the Motion To Dismiss field by Defendant St. Landry Parish Fire District No. 3 [Rec. Doc. 4].

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court,**

except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

     **THUS DONE AND SIGNED** this 8th day of August, 2018 at Lafayette, Louisiana.

 

                                  _____

                                  **CAROL B. WHITEHURST**
                                  **UNITED STATES MAGISTRATE JUDGE**