# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH LARRY MOREAU, JR.** | **CIVIL ACTION NO.   6:18-00532** |
| **VERSUS** | **JUDGE TERRY DOUGHTY** |
| **ST. LANDRY PARISH FIRE DISTRICT NO. 3, ET AL.** | **MAG. JUDGE WHITEHURST** |

## RULING

This is a lawsuit filed by Plaintiff Joseph Larry Moreau, Jr. ("Moreau") against St. Landry Fire Protection District No. 3 ("District 3") and the seven individual members of the Board of Commissioners.  Moreau brought suit pursuant to 42 U.S.C. § 1983, contending that his civil rights were violated because he was terminated in retaliation for exercising his First Amendment rights.  Additionally, in his second Amended and Superseding Complaint Moreau asserted a procedural due process claim against Defendants under federal and state law.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. No. 43]. Defendants move to dismiss all claims against them.  Moreau has filed a memorandum in opposition [Doc. No. 65].   Defendants filed a reply.  [Doc. No. 73].

For the following reasons, the motion is GRANTED, and Moreau's claims are DISMISSED WITH PREJUDICE.

## I.      FACTS AND PROCEDURAL BACKGROUND

District 3 is a fire protection district organized pursuant to La. R.S. 40:1491, *et seq.*   It is a political subdivision of the State of Louisiana.   District 3 is governed by the 7-member Board

of Commissioners ("BOC"). At all material times, the members of the BOC were as follows: Chairman Wilfred Kinnerson ("Chairman Kinnerson"), Donald Robinson, Greg Doucet, Terri Courvelle, Frank Guidroz, Ryan Chachere and Pamela Jackson. Candice Elkins ("Elkins") is the secretary to the BOC.

District 3 employed Moreau in the classified civil service position of Fire Captain until March 20, 2018. As a Captain, Moreau was generally the highest-ranking officer at the fire station where he served, and he often supervised employees. Moreau also occasionally "stepped-up" to the position of District Fire Chief. When he worked in that position, Moreau was in charge of the entire shift.

Chief Rabalais became Interim Fire Chief in July 2017 after the BOC terminated District 3's prior Fire Chief, Ray Mendenhall. Chief Rabalais was Interim Fire Chief up until recently when he became District 3's permanent Fire Chief.

In May of 2017, Moreau was accused of refusing to participate in a fire training exercise. In his pre-disciplinary hearing before the BOC, Moreau produced evidence that he refused to participate because he had suffered an on the job injury that he did not report. The BOC voted to issue Moreau a letter of reprimand for failing to report this injury. Chairman Kinnerson, however, wanted to fire Moreau over this training incident. This episode created a "personal problem" between Moreau and Kinnerson.

On or about January 8, 2018, the Vermillion Parish School Board ("the School Board") held a meeting during which a Vermillion Parish school teacher attempted to question the members about a potential raise for the superintendent. The School Board had a police officer remove the teacher from the meeting. She was handcuffed and taken to jail.

On or about January 10, 2018, Moreau posted a comment on a friend's Facebook post about the School Board controversy. Moreau posted as follows:

> [A]ll of this going on with this poor teacher being treated so unfairly makes one thing perfectly clear. . . These "boards" everywhere, ruled by good old boy politics need to be dissolved ASAP..!! We have the same exact problem at our fire department . . . A board of clueless idiots making the decisions that affect many including the very employees that actually do the job.. It's a joke . . [. . .]. I hope this teacher makes them pay...and pay big time.!!

[Doc. No. 1, ¶ 12].

Two days later on January 12, 2018, Elkins saw the comment and responded to it stating " . . . that FD3 Board of clueless idiots is about to begin fighting for a favorable outcome on that millage on March 24th . . . I'd say in the last year that board has made quite a bit of progress!" [Doc. No. 43-1, p. 4, Moreau Depo., Exh. A, pp. 54-55; Exh. LM-17 to Moreau Depo.]. Moreau deleted his comment from Facebook.

After Elkins' initial comment, Moreau and Elkins engaged in a private Facebook message exchange. [Doc. No. 43-1, p. 4, Moreau Depo., Exh. A, pp. 70-79, 82-88; Exh. LM-18 to Moreau Depo.] as follows:

> [MOREAU:] Not trying to be ugly here so don't get all wound up . . . But if you're looking up my page and trying to Police what I say because you happen be on our board than I will have to delete you. I didn't call all of you idiots. You know exactly the ones I'm talking about. I'm not stupid, I spent the better part of last summer having to literally fight for my job after working my ass off there for 27 damn years. . Also having to actually sit at a board meeting and explain myself after providing 2 different doctors [sic] excuse as to why I couldn't work that day . . !! [two angry emojis]. Fucking embarrassing, humiliating and wrong . .All because of one IDIOT on the board . !! I did not deserve that!! Remember it was y'all who hired that nut four years ago . . .it was y'all who sat back and did nothing while he practically ruined our department. It was y'all who gave him a blank check, allowed him to treat the men like shit (especially the older ones like myself) and then finally at the end after we were broke did y'all wake up . All this stuff going on with this teacher in Abbeville shows that this good old boy political crap is for the birds and I can't wait to get away from it . . . Going in the drop October 31st of

3

this year. . . I will never work a political job again that's for certain [thumbs up emoji].

[ELKINS:] Dude . . . didn't look up your page to police anything. Scrolling through fb this morning and there it was for any of your friends to see. Just to clarify, I'm not on the board so I didn't take offense. I work for the board, I happen to love Fire District 3, and will work with the board and the entire staff of firefighters to make it great again! That's my goal.

[MOREAU:] Well, I've seen an awful lot of dirty s[t]uff go on over there is 27 years . . . !! Just tired of it. Ready to go do something else. And for the record I do thin y'all are on the right track . . .If they don't make Rabalais chief, I might just outright quit. He's definitely without a doubt the right man for the job. . . .But this board has a history in the past of not always doing the "right" things . . .

[ELKINS:] The Board, and all of us affiliated with FD3, have worked tirelessly in the last year to turn things around. Some of us prefer to look towards the future rather than dwell on the past. It's a different board now and they are trying hard to do the right thing. You misspoke when you referred to them as clueless idiots, but that's just my opinion. You probably should not speak negatively, nor post negatively on social media, about the agency which has provided your likelihood for the past 27 years, no matter how tired you are of it. Just offering my 2 cents, for what it's worth. Have a good weekend!

[MOREAU:] I'm sorry but Kennerson is a clueless idiot who should not even be allowed near a board of any kind that makes decisions . . .Don't think I misspoke one bit. And it's not easy to just forget the past when you've just given up 27 years of your life seeing and living it. It has been a prison at times not a livelihood. . . and my sentence is almost up. At this point I'm just hoping my last few years is a little more pleasant than the first 27 have been . .

[MOREAU:] I really don't think y'all realize just how bad the moral [sic] of the men is over there. . . !!! It's literally completely in the toilet.!! Hopefully that'll get better as well . .

[Doc. No. 43-2; Moreau Depo., Exh. A, pp. 70-69, 82-88 & Ex. LM-18 to Moreau Depo.]. Elkins

responded with a picture of a sign that reads in part: "HAPPY IS WHAT WE MAKE IT."

Moreau then responds: "Maybe where you work . . . ." *Id.*

Elkins made a complaint about the comments to Chief Rabalais, who requested authority

from the BOC to open two employee disciplinary investigations. He did not provide details, but the BOC gave its approval.

On January 23, 2018, Moreau received a written notice of investigation. The notice informed Moreau that he was being investigated for responding "to a post on Facebook in which [he] included disparaging remarks about the St. Landry Parish Fire District No. 3 Board of Commissioners." [Doc. No. 43, Exh. A, Moreau Depo., Exhs. LM-12 & 13 to Moreau Depo.].

On January 29, 2018, Chief Rabalais questioned Moreau. Moreau denied that his post was negative about the BOC, but a general statement about boards "of what can happen when boards, basically don't have their act together." [Doc. No. 43, Exh. A, Moreau Depo., Exh. LM-14 to Moreau Depo.]. Moreau then referred him to the Facebook messenger exchange he had with Elkins, but told Rabalais that he did not keep the messages. [Doc. No. 43, Exh. A, Moreau Depo., LM-14 to Moreau Depo.].

Rabalais obtained the messages from Elkins.

On February 28, 2018, Moreau received a written notice of pre-disciplinary hearing indicating that a pre-disciplinary hearing would take place before the BOC at its March 20, 2018 meeting. That notice apprised him that the BOC would be considering disciplinary action and that he could present witnesses and evidence. In addition to the social media policy violation, the notice apprised Moreau that he was being charged with committing the following violations listed in the state civil service law, La. Rev. Stat. § 33:2500:373[1]:

(3) The commission or omission of any act to the prejudice of the departmental

---

[1]Defendants note that "District 3's citation to La. R.S. 33:2500 is a mistake. It should have cited to La. R.S. 33:2560, which is identical in every respect to section 2500. Section 2500 is part of the civil service law that applies to mid-sized municipalities. Section 2560 is part of the civil service law that applies to small municipalities and fire districts." [Doc. No. 43-1, p. 21 n.37]. The citation is not controlling, but the Court takes note of this undisputed fact.

service or contrary to the public interest or policy.

(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.

(14) The willful violation of any provision of this Part or of any rule, regulation, or order thereunder.

[Doc. No. 43, Exh. A, Moreau Depo., Exh. LM-15 to Moreau Depo.].

Approximately one week prior to that March 20, 2018 BOC meeting, Rabalais hand-delivered disciplinary packets to the individual BOC members containing, among other things, a copy of Moreau's Facebook comment and a copy of the transcript of the January 29, 2018 interrogation. Chief Rabalais gave Moreau copies of the messages that he obtained from Elkins, but did not provide those messages to the BOC.

Elkins supplied copies of the Moreau/Elkins messages to the BOC during Moreau's March 20, 2018 pre-disciplinary hearing.

On March 20, 2018, Moreau was present for a pre-disciplinary hearing. During the meeting, the following exchanges took place:

FRANK GUIDROZ:    So on your social media post, where you had put, "These boards everywhere ruled by good-old-boy politics need to be resolved. We have the same exact problem in our fire department." So when you say, "our fire department," that's Fire District Three right?

JOSEPH MOREAU:    Yes. As I told Chief Rabalais in his interview, I was in the context of the conversation I was having with this other person, I was actually referring to Fire District Three, but older boards, not the current board, which I think I told him in the

6

interview, when he came [sic] interviewed me.   It should be in there somewhere. It's a long one-- So it was about Fire District Three, but not the current district.

. . .

TERRI COURVELLE:      Did you think it was all right?

JOSEPH MOREAU:      I guess, I did think it was okay, because once again, I was not referring to this current Board.

TERRI COURVELLE:      Okay.

JOSEPH MOREAU:      I was referring to earlier boards.

[Doc. No. 43-5, Exh. C, Transcript of 3/20/18 BOC Meeting, p. 10].   Moreau also told the BOC that his comment had only been posted on Facebook for "Maybe a few hours. Not even a day." *Id.*; [Doc. No. 43-2, Exh. A, Moreau Depo., p. 64].

During the BOC's March 20, 2018 discussion of Moreau's matter, Chief Rabalais took the position that "Moreau should be fired not because of Moreau's social media post but because of Rabalais' pure conjecture that Moreau might be making negative comments to other employees." [Doc. No. 36, ¶ 92; Doc. No. 43-2, Exh. C, Transcript of BOC Meeting, p. 36].

At the hearing, the BOC unanimously voted to terminate Moreau.

On March 21, 2018, written notice of termination was provided to Moreau that it had terminated his employment with District 3 because of his "disparaging remarks" about the Board of Commissioners on Facebook.   [Doc. No. 1-1, Exh. A.].   Moreau was further advised that he was terminated for the three reasons identified in his pre-termination hearing notice:

> (3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.

(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.

(14) The willful violation of any provision of this Part or of any rule, regulation, or order thereunder.

[Doc. No. 43, Exh. A, Moreau Depo., Exh. LM-20 to Moreau Depo.].   Moreau was also advised in the notice that he could appeal to the civil service board within fifteen days, but he did not do so.

Moreau filed this action on April 19, 2018, naming District 3 as the Defendant and asserting First and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983.

On June 8, 2018, Moreau filed an Amended Complaint adding the individual BOC members as Defendants.

On May 17, 2019, Moreau filed an Amended and Superseding Complaint, adding Chief Rabalais as a Defendant, adding additional factual allegations, and adding procedural due process claims under state and federal law.

On July 12, 2019, Defendants filed the instant Motion for Summary Judgment and attached exhibits, including the Facebook comments and private exchanges between Elkins and Moreau.

On July 31, 2019, the Court granted Defendant Ryan Chachere's unopposed Motion for Summary Judgment, and all claims against him were dismissed.   [Doc. Nos. 57 & 58].   The claims remain against the Fire District No. 3, the Board itself, and all other BOC members.

On August 5, 2019, Moreau filed a Motion to Strike the Moreau-Elkins Facebook messenger exchange.

On August 7, 2019, Moreau filed a Memorandum in Opposition to the instant Motion for

Summary Judgment. [Doc. No. 65].

On August 14, 2019, Defendants filed a Reply in Support of their Motion for Summary Judgment [Doc. No. 73].

On August 23, 2019, after the Motion to Strike was fully briefed, the Court issued a Ruling and Order [Doc. Nos. 81 & 82] denying the motion, but indicating that Moreau's arguments would be considered (to the extent applicable) with regard to the pending Motion for Summary Judgment.

The Motion for Summary Judgment is now ripe.[2]

## II. LAW AND ANALYSIS

### A.    Summary Judgment

Summary judgment "shall [be] grant[ed] . . .  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.   *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.   *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).   The nonmoving party must show more than "some metaphysical doubt as to the material facts."   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its

---

[2]Also pending before the Court are a converted motion to dismiss [Doc. No. 34] and a motion in limine [Doc. No. 46] filed by Defendants and a Motion for Partial Summary Judgment [Doc. No. 47] filed by Moreau.

favor. *Anderson*, 477 U.S. at 255.

**B.    First Amendment Claim**

First, Defendants move for summary judgment on Moreau's claim that he was terminated in retaliation for exercising his First Amendment rights as a private citizen by posting on Facebook. Defendants argue that Moreau cannot show that he spoke on a matter of public concern, and, therefore, he has no First Amendment claim.

Moreau responds that he posted on Facebook as a private citizen.   He argues further that Defendants could not lawfully fire him in retaliation for his speech because he engaged in protected speech on a matter of public concern.

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citations omitted).

> There are two inquiries to guide interpretation of the constitutional protections accorded to public employee speech.   The first requires determining whether the employee spoke as a citizen on a matter of public concern. . . . If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. . . . If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti*, 547 U.S. at 418; *see also Lane v. Franks*, 573 U.S. 228, 237 (2014) (If an employee did not speak on a matter of public concern, then "'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'") (quoting *Garcetti*, 547 U.S. at 418).

A plaintiff who asserts a First Amendment free-speech retaliation claim in the employment context must establish four elements: "(1) [he] suffered an adverse employment decision, (2) [his] speech involved a matter of public concern, (3) [his] interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc) (citing *Lukan v. N. Forest ISD*, 183 F.3d 342, 346 (5th Cir. 1999)).[3] The second and third questions are legal in nature and are for the Court to resolve. *See Connick*, 461 U.S. at 147–48, n. 7; *Coughlin v. Lee*, 946 F.2d 1152, 1156 (5th Cir. 1991).

"Whether the speech in question violates an employer's policy has no relevance to whether the subject matter of the speech is on a matter of public concern." *Salge v. Edna Independent Sch. Dist.*, 411 F.3d 178, 185 (5th Cir. 2005). Instead, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 186 (citing *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). These factors "must be considered as a whole package, and [their] significance . . . will differ depending on the circumstances of the particular situation." *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989). If an employee's speech involves both public and private concerns, so-called mixed speech, the Court examines whether the content, context, and form of the statements are *predominantly* public or private. *Foley v. Univ. of Houston Sys.*, 355

_____

[3]"If the plaintiff carries this burden, then the defendant must show, by a preponderance of the evidence, that it would have taken the same action against the plaintiff even in the absence of the protected conduct." *Lukan*, 183 F.3d at 346 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283-87 (1977); *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1423 (5th Cir.1997)). Finally, a plaintiff can rebut the defendant's showing with evidence that its "ostensible explanation for the discharge is merely pretextual." *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991).

F.3d 333, 341 (5th Cir. 2003).[4]   As the Fifth Circuit has recognized "[m]ixed speech cases are perhaps the most difficult subset of employee speech cases to adjudicate. Because the employee admittedly speaks from multiple motives, determining whether she speaks as a citizen or employee requires a precise and factually-sensitive determination." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 367 (5th Cir. 2000), abrogated on other grounds by *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007).

In *Kennedy*, the Fifth Circuit identified certain principles in determining whether speech is protected.   First, the content of the speech *may* relate to the public concern if it does not involve "solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government."   *Id.* at 366-67 (citing *Wilson v. Univ. of Tex. Health Ctr.*, 973 F.2d 1263 (5th Cir. 1992)).   Second, speech on matters of public concern need not be made before a public audience.   Finally, speech is not on a matter of public concern if it is made solely in "furtherance of a personal employer-employee dispute." *Id.*at 372.

In accordance with these precepts, the Fifth Circuit has noted that speech regarding "internal personnel disputes and working conditions" will not ordinarily involve the public concern.   *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001). Typically, an employee speaks in furtherance of a personal employer-employee dispute "when he discusses personnel matters directly impacting his job or criticizes other employees or supervisors' job performance."

---

[4]The Fifth Circuit has employed varying forms of the content-form-context test and the citizen-employee test, but, as one panel noted, there appears to be no "significant difference between these varying approaches used to analyze mixed speech cases given that they ultimately ask the same question. In fact, we have been unable to find a single case in which the application of these varying tests brought the panel to different conclusions."   *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 826, 826 n.4 (5th Cir. 2007) (citations omitted).

*Salge*, 411 F.3d at 188 (citing *Kirkland v. Northside Independent Sch. Dist.,* 890 F.2d 794, 798 n. 10 (5th Cir. 1989)).   Thus, the Court must examine whether Moreau's speech was predominantly public or private.   The Court turns to an analysis of the content, form, and context.

First, as to content, the Court returns to an examination of Moreau's post itself:

> A]ll of this going on with this poor teacher being treated so unfairly makes one thing perfectly clear. . . These "boards" everywhere, ruled by good old boy politics need to be dissolved ASAP..!!    We have the same exact problem at our fire department . . . A board of clueless idiots making the decisions that affect many including the very employees that actually do the job.. It's a joke . .   [. . .]. I hope this teacher makes them pay...and pay big time.!!

From a review of the post, it is clear that a portion of Moreau's speech involved public concern— the Vermillion Parish School Board incident was the topic of news coverage at the time and invoked outrage from many people on the arrest of the teacher, as well was the pay issues she raised.   On the other hand, Moreau's speech also invoked concerns about his own employment, when he states: "We have the exact same problem at our fire department . . . A board of clueless idiots making the decisions that affect many including the very employees that actually do the job. It's a joke."   Such speech has been held to be private. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 381 (5th Cir. 1999) ("[I]n the past we have held that speech concerning the conditions of one's employment is a private matter.") (citing *Gillum v. City of Kerrville*, 3 F.3d 117, 120-21 (5th Cir. 1993)); *see also Foley*, 355 F.3d at 341 ("Speech that is primarily motivated by, or primarily addresses, the employee's own employment status rather than a matter of public concern does not give rise to a cause of action under § 1983.").   The speech appears designed to allow Moreau to rant about his own concerns and does little to "inform the populace of more than the fact of an employee's employment grievance."  *Salge*, 411 F.3d at 187.   Even viewing this evidence in the

light most favorable to Moreau, *at best*, the speech in question appears to be a draw—equally devoted to public and private concerns.

The Court must turn, therefore, to the context and form to analyze the speech more fully and determine whether private or public concerns predominate. When considering form, the Court finds that this factor weighs against a finding of public concern. Facebook posts are viewed only by the "friends" one allows on that site unless the Facebook post was made public. There is no evidence that Moreau's post was public. Further, his comment was made in response to a comment by one of his Facebook friends, not on a public page, community board, or other place where one might make a complaint of public concern.

Finally, when considering the context, it is appropriate for the Court to consider the Facebook messenger exchange which was precipitated by Moreau after Elkins responded to his comment on Facebook.[5] His exchange with Elkin serves to illuminate his original post and provides the context necessary for the Court's review. Although there is one comment when he refers to the lack of morale, that comment is only one among a litany of Moreau's personal frustrations. It is clear that he speaks as an employee disgruntled by his recent experience with a disciplinary hearing before the BOC, that he considers Chairperson Kinnerson a "clueless idiot," and that his concerns are personal, not public.

When considering all factors, as it must, the Court finds as a matter of law that Moreau's speech was predominantly private, not public, and was not protected. Therefore, Defendants are

---

[5] The Court has relied on the Facebook post itself in evaluating content because this is the speech upon which the BOC relied in terminating Moreau. On the other hand, the BOC had received the messages prior to reaching the termination decision, and it is clear from the transcript that members had reviewed the messages. Therefore, they are appropriately considered as part of the context.

entitled to summary judgment on his First Amendment claims.[6]

## C. Procedural Due Process Claims

Moreau also brought due process claims under the Due Process Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; Article I, § 2, and Article X, §§ 5 and 8, of the Louisiana Constitution; and the Louisiana Fire Service Bill of Rights, LA. REV. STAT. 33:2181. Moreau argues that his rights under state and federal law were violated because he was terminated "for various, ill-defined, reasons in addition to his Facebook post" and these reasons were not disclosed to Moreau "as required by law." [Doc. No. 65, p. 20].

Defendants originally moved for summary judgment on Moreau's Due Process claims, arguing that they are untimely and that, even if timely, Moreau was provided with the due process required by the Fourteenth Amendment. In their reply, they address Moreau's additional argument under the Fire Service Bill of Rights, arguing that it does not provide a private right of action for damages.

The Due Process Clause of the Fourteenth Amendment provides in relevant part that no state "shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. To prevail on a § 1983 claim for deprivation of procedural due process, a plaintiff must first demonstrate the existence of a property interest that is protected by the Due Process Clause. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Property interests are not created by the Constitution, but are created and defined by rights under state law that support claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); s*ee also Bishop*, 426 U.S. at 344; *Wallace v. Shreve Memorial Library*, 97 F.3d 746, 748 (5th Cir. 1996).

---

[6]Given the Court's conclusions, it need not reach the additional arguments regarding Chief Rabalais or qualified immunity.

Additionally, under Article I, § 2, of the Louisiana Constitution, "No person shall be deprived of life, liberty, or property, except by due process of law."

In this case, it is undisputed that Moreau had a property interest in his continued employment by virtue of his tenured civil service employment. *See* Art. X, §§ 5 & 8; *see also Casey v. Livingston Parish Comms'ns Dist.,* No. 07–30990, 2009 WL 577756, at *3 (5th Cir. Mar. 6, 2009) ("Civil-service employees have a property interest in maintaining their positions, and, accordingly, cannot be terminated without due process") (citing *AFSCME, Council # 17 v. State ex rel. Dep't of Health & Hosps.* 789 So.2d 1263, 1267–68 (La. 2001)); *see also Vanderwall v. Peck*, 129 F. App'x 89, 91 (5th Cir. 2005) ("In Louisiana, a person acquires a protectable property interest in a government job . . . if the employee is classified under the state civil service system[.]").

However, Defendants argue that he failed to make a due process claim within the applicable statute of limitations and that he was given all the due process to which he was entitled.

### 1. Applicable Statute of Limitations

"Federal courts considering claims under § 1983 borrow the relevant state's statute of limitations for general personal injury actions. *Perez v. Physician Assistant Bd.*, 765 F. App'x 960, 963 (5th Cir. 2019) (citing *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018)). In Louisiana, the statute of limitations, or prescriptive, period is one year. *Jones v. Orleans Parish Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982); *see also Elzy v. Roberson*, 868 F.2d 793, 794–95 (5th Cir. 1989) ("Since article 3492 is Louisiana's only statute of limitations for personal injury actions, we find no error in the district court's application of that article's one-year prescriptive period to Elzy's § 1983 action."). "Federal law governs when the cause of action

accrues and dictates that the limitations period begins when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Perez*, 765 F. App'x at 963; "The accrual date of a federal cause of action is judged not from the date the injury ceases, but from the earliest date a plaintiff was or should have been aware of his injury and its connection with the defendant." *Brossette v. City of Baton Rouge*, 29 F.3d 623, 1994 WL 395052 at *2 (5th Cir. 1994) (citing *Perez v. Laredo Junior College,* 706 F.2d 731, 733 (5th Cir. 1983)).

Defendants argue that, in this case, Moreau was personally present at his termination hearing on March 20, 2018, and he received written notice of his termination the following day, March 21, 2018. Even using the later date, Moreau had one year, or until March 21, 2019, to file his due process claim. Although Moreau filed this lawsuit on April 19, 2018, he did not move to amend his complaint to assert a due process claim until May 16, 2019. Thus, Defendants contend that Moreau's due process claim is timely only if it relates back to his original timely filing under Federal Rule of Civil Procedure 15(c)(1).

Defendants argue further that Moreau's addition of the due process claim does not relate back because he alleged new conduct that they were not fairly apprised of by the original complaint (or the first amended complaint).

Moreau does not dispute that he was aware of his termination on March 21, 2018. However, Moreau contends that he was not aware of the basis for his due process claims until his counsel deposed Defendants in March 2019. He contends that he has a due process claim because Defendants offer additional reasons for his termination of which he did not receive notice. Once he became aware of these additional reasons for his termination, which he contends were not the

subject of his termination hearing, he amended his complaint to assert a due process claim under federal and state law within the time permitted.

In their reply, Defendants respond that Moreau's pre-hearing notice was sufficient to place him on notice and, at the least, to inquire into all causes of his termination. While not cited, Defendants contend that Moreau seeks to rely on the doctrine of *contra non valentum* and that he has failed to meet his burden when an exercise of due diligence would have provided him with any additional information he needed prior to the expiration of the statute of limitations.

First, the Court finds that Moreau's federal due process claim is untimely on its face. He was aware of his termination, the injury from which the statute of limitations begins to run, and the one-year statute of limitations ran prior to his latest amendment.

The Court then must consider whether his claim relates back to the original (or amended) complaint. Federal Rule of Civil Procedure 15(c)(1)(B) allows an amendment to relate back when the amendment "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading."[7] Only claims "tied to a common core of operative facts" as the claims in the original petition or complaint will relate back. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). A "new ground for relief supported by facts that differ in both time and type from those the original pleading set forth" does not relate back and, thus, is time barred. *Id.* at 650; *see also United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) ("New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision."). "'[O]nce litigation

---

[7]Under Rule 15(c)(1)(A), amendment may relate back if "the law that provides the applicable statute of limitations allows relation back." In this case, however, the applicable Louisiana law, La. Code of Civ. P. art. 1153 is identical to Rule 15(c)(1)(B), and thus the test to be applied is that of Rule 15(c)(1)(B). *See McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 863 n.22 (5th Cir. 1993).

involving a particular transaction has been instituted, the parties should not be protected [by the statute of limitations] from later asserted claims that arose out of the same conduct set forth in the original pleadings.' " Flores v. Cameron County, Tex., 92 F.3d 258, 272 (5th Cir.1996) (quoting *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362, 1366–67 (5th Cir. 1994)). Thus " 'if a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in a prior complaint, then relation back is allowed.' " *Id.* at 273 (quoting *F.D.I.C. v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994)).   On the other hand, an amended complaint "will not relate back if it asserts new and distinct conduct, transactions, or occurrences as the basis for relief" and attempts "to add a new legal theory unsupported by factual claims raised in the original complaint." *McGregor*, 3 F.3d at 863-64.

In *McGregor*, a disabled LSU law student failed to maintain the required GPA after his first year and again after he was readmitted for a second year.   He petitioned LSU for readmission and was offered readmission under certain conditions.   However, he brought suit against LSU under Section 504 of the Rehabilitation Act of 1973, attacking the accommodations LSU offered and the accessibility of the Law Center.   More than one year after filing suit, McGregor amended his complaint to add claims that he had been deprived of due process on   the three petitions for accommodation (for readmission, to attend law school part-time, and to advance to the junior level respectively) submitted to LSU.   Although McGregor's original Complaint refers to his requests for accommodations and advancement, the Fifth Circuit found that the

> original complaint could not have put the Law Center on notice of the due process claims. The original complaint may suggest that McGregor was not satisfied with the Law Center's decisions, but it does not plead, even when liberally construed, that the Law Center's decision-making process was inadequate under the Fourteenth Amendment Due Process Clause. No mention is ever made in the prior pleadings of any appeals policy or procedure, and a Due Process claim requires more than a

showing that the Law Center refused to accommodate McGregor as requested. McGregor's amendment attempted to add a new legal theory unsupported by factual claims raised in the original complaint. As we see it, the due process claims, seeking relief for the Law Center's inadequate appeal process, set forth new and distinct conduct, transactions, or occurrences not found in the original complaint. Liberal application cannot cure the failure of McGregor's second amended complaint to satisfy the mandate of Rule 15(c).

*McGregor*, 3 F.3d at 864 (citation omitted).

In this case, Moreau's allegations in the original Complaint certainly raised the fact that he had a termination hearing and that he was terminated on the basis of his social media post. As in *McGregor*, Moreau's factual allegations clearly indicated that he was dissatisfied with the outcome of his termination hearing, but they did not plead that the decisionmaking process was inadequate. Rather, all of the factual allegations place Defendants on notice that Moreau believed he was unlawfully terminated for an exercise of his free speech rights under the First Amendment and on the basis of an unconstitutional social media policy. *See* [Doc. No. 1]. Further, even when Moreau amended his Complaint the first time on June 8, 2018 (within the statute of limitations for bringing a due process claim), adding Board members as Defendants, he did not make any factual allegations supporting a due process claim. In neither pleading did Moreau allege that notice was inadequate or that the decision-making process was flawed. His latest amendment, however, adds a significant number of facts, as well as adding new legal theories.[8] Under these circumstances, the Court concludes that Moreau's May 2019 amendment to add a due process claim did not relate back to his timely Complaint or Amended Complaint.

Moreover, to the extent that he attempts, as Defendants suggest, to rely on the doctrine of

---

[8] For example, Moreau now asserts that he had entitlements under the Fire Service Bill of Rights, La. Rv. Stat. § 33:2181. To the extent that he contends that this creates some type of property interest, it is undisputed that he had a property interest in continued employment. To the extent that he is asserting a new cause of action under that statute, the Court has addressed that clam separately.

*contra non valentum*, his claim fares no better.   The Court would note, first, that, while state law provides the statute of limitations or prescriptive period, it is federal law that commences the running of that period.   Nevertheless, to the extent that this state law doctrine applies to toll the running of the period, it is inapplicable.

"*Contra non valentem* is a judicially created exception to prescription based on the civil doctrine of *contra non valentem agere nulla currit praescriptio*, which means prescription does not run against a party who is unable to act." *In re: Medical Review Panel of Moses*, 00–2643 (La.5/25/01), 788 So.2d 1173, 1178 n.10 (citing *Crier v. Whitecloud*, 496 So.2d 305, 307 n. 4 (La.1986)(on reh'g)). This doctrine "prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff."   *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993).   The Louisiana Supreme Court has recognized only four instances when *contra non valentem* suspends prescription, but only the third and fourth appear applicable: "the debtor (defendant) himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action; or   . . . the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 884 n.37 (5th Cir. 2002) (citing *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99), 737 So.2d 720, 730 (citing *Plaquemines Parish Comm'n Council v. Delta Development Co.*,   86-0950 (La. 2/23/87), 502 So.2d 1034, 1054-55; *Whitnell v. Menville*, 88-1285 (La. 3/13/89), 540 So.2d 304, 308).

In this instance, Moreau claims that he did not know until he deposed Defendants that they purportedly relied on reasons in addition to his social media post for firing him.   He claims that Defendants concealed this information from him and that he could not have known until the

depositions held in March 2019. However, he admits that the pre-termination hearing he was given did, in fact list three general provisions of the civil service law that he was charged with violating. [Doc. No. 43-3 Exh. A, p. 154, Exh. LM15 to Moreau Depo.]. Prior to the time of his termination, he was aware of these provisions and could have inquired into them further before the statute of limitations expired. Under these circumstances, Moreau cannot meet the heavy burden of showing that the statute of limitations should be tolled, suspended, or interrupted because of any action of Defendants or because the basis for the due process claims under federal or state law could not reasonably be discovered in the exercise of due diligence.

The Court finds, for all of these reasons, that Moreau's procedural due process claims are untimely, and Defendants are entitled to summary judgment on these claims.

### 2. Substantive Review of Due Process Claims

In an abundance of caution, the Court also addresses the substantive merits of Moreau's state and federal due process claims. Because "[t]he due process . . . clause[] in the federal Constitution [is] analogous to [that] contained in the [Louisiana] state constitution," the Court addresses them together. *See Montagino v. Canale*, 792 F.2d 554, 557 (5th Cir. 1986); *see also Smith v. Bd. of Supervisor for the Univ. of La. Sys.*, No. CV 13-5505, 2015 WL 10663156, at *13 (E.D. La. Dec. 11, 2015).

"[W]here a . . . property interest is infringed, the process which is due under the United States Constitution is that measured by the due process clause, not that called for by state regulations. Mere failure to accord the procedural protections called for by state law or regulation doe not of itself amount to a denial of due process." *Giovanni v Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) (citation omitted).

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court held that a tenured public employee is only entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," as opposed to a full pre-termination adversarial hearing. *Id.* at 546. Where the employee was entitled to a full post-termination administrative hearing, the *Loudermill* Court explained that a pre-termination hearing does not need to be elaborate and can be "an informal hearing which allows the employee to give his version of the facts" to sufficiently "hedge[] against an erroneous dismissal and likewise satisfies the requirements of due process." *Id.*

Applying *Loudermill*, in *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993), the Fifth Circuit held that a 30-minute informal hearing between the plaintiff, a firefighter who had previously been disciplined, and his supervisor satisfied due process because the plaintiff was given notice of his possible termination, the reasons he was being terminated, an opportunity to respond, and he could take advantage of "elaborate post-termination procedural safeguards." *Id.* at 844-45.

The same is true in this case. While Moreau disputes the "notice" given to him, he was, in fact, told of all the bases of his possible termination, he had a hearing before the BOC, he had an opportunity to respond and present his side of the story, and he had available to him an appeal to the Civil Service Board. Moreau was given all the procedural due process to which he was entitled, and Defendants are entitled to summary judgment on this basis as well.

### 3. Fire Service Bill of Rights

Finally, the Court has considered whether the Fire Service Bill of Rights created additional rights under state law. The Fire Service Bill of Rights was established

to promote the rights of members of the fire service in Louisiana and to insure that their rights are safeguarded and protected. This Fire Service Bill of Rights consists of a statement, in nontechnical terms, of the rights of members of the fire service and obligations to them. The rights afforded members of the fire service are available insofar as they are implemented in accordance with the Constitution of Louisiana and Louisiana Revised Statutes of 1950, the administrative rules of state and local governmental entities, and the budgetary consideration of state and local governmental entities.

LA. REV. STAT. § 33:2012B.   Under La. Rev. Stat. § 2181, certain standards are applicable to the investigation and subsequent discipline of a "fire employee."

In this case, Moreau relies on two "rights" under the statute.   Section 2181(B)(1) provides: "Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing . . . of the specific charges or violations being investigated." Additionally, § 2181(D) provides:   "[i]n every case of corrective or disciplinary action taken against a regular employee of the classified civil service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor."

Assuming that this statute provides for particularized due process rights, the Court finds that   Moreau's due process rights were satisfied by the letter and the pre-termination hearing, "as he was given notice of the charges against him, an explanation of his employer's evidence, and an opportunity to present his side of the story." *Voltolina v. St. Tammany Fire Dist. 12*, 2006-1498 (La. App. 1 Cir. 9/19/07), 970 So. 2d 1015, 1018 (citing *Loudermill*, 470 U.S. 532).   Again, Moreau does not dispute that he was given notice; rather, he claims that he was not given the "complete reasons" for which he was terminated.   [Doc. No. 65, p. 24].   Again, however, he admits that the he was advised of the three additional categories for his termination.

Moreover, even if the notice was not "complete," as required by statute, Defendants are

correct that the statute does not provide for a private cause of action for damages. Although no state court has addressed this issue, another state court has addressed a similar statute and found that its bill of rights did not provide a private cause of action for damages. *See Curtis v. City of W. Palm Beach*, 82 So.3d 894, 896 (Fla. Dist. Ct. App. 2011). Moreover, at least one Louisiana appellate court has considered the similar police officer bill of rights statutes do not create a private cause of action of damages. *See Almerico v. Dale*, 05-749 (La. App. 5th Cir. 3/28/06), 927 So.3d 586, 593-94 (The police officer bill of rights "sets out minimum standards to apply whenever a law enforcement officer is under investigation with a view to possible disciplinary action, demotion, or dismissal. That statute cannot be cited, however, as a basis for an abuse of process claim."); *see also Myers v. City of Portage*, 848 N.W.2d 200, 204 (Mich. App. 3/4/14) (construing a virtually identical Michigan statute, the appellate court held that it "does not create a private cause of action for monetary damages.");

In this case, a termination of a fire employee which does not comply with the statute is deemed a "nullity," which, presumably, would support reinstatement, but that is not the remedy Moreau seeks. Moreau had a process under the civil service laws to appeal his termination to the Civil Service Board and then to the state courts if he so chose. *See, e.g., Bergeron v. City of Kenner*, 10-229 (La. App. 5th Cir. 10/26/10), 51 So.3d 143. He did not do so, but instead seeks damages for a private right of action in this Court, and that remedy is not provided by statute. Since there are no Louisiana Supreme Court decisions addressing this issue, the Court must make an "Erie guess" about how the Louisiana Supreme Court would read the statute. See *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir.1999). It is this Court's "guess" based on the law that the Louisiana Supreme Court would not read in a private right of action for damages where a remedy

is already provided.   Therefore, Moreau has failed to raise a genuine issue of material fact for trial on this basis either, and Defendants are entitled to summary judgment on his state and federal due process claims.[9]

**III.      CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 43] is GRANTED, and Moreau's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 10th day of September, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[9]The Court need not reach the remaining arguments on qualified immunity or the *Parratt/Hudson* doctrine.